**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

───────────────────────────────

**UNITED STATES OF AMERICA,**

                              **Plaintiff,**

 **v.**

**NADER NGOOPOS,**                                                  **21-CR-138JLS**

                              **Defendant.**

───────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

          This case was referred to the undersigned by the Hon. John L. Sinatra,

Jr., in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and

report upon dispositive motions.

## PRELIMINARY STATEMENT

          The defendant, Nader Ngoopos ("the defendant"), is charged along with

two co-defendants with having violated Title 21 U.S.C. § 846, Title 18 U.S.C. §§

924(c)(1)(A), 924(c)(1)(a)(I) and (II); 922(g)(1), 924(a)(2); Title 18 U.S.C. § 1951(a).  He

has filed a motion wherein he seeks suppression of the use of evidence seized pursuant

to certain specified search warrants as well as suppression of the use of evidence

seized during a vehicle police stop in which he was a passenger.  He also filed a motion

wherein he requests a hearing regarding photographic arrays that were used in

establishing the identity of the defendant relating to New York State criminal charges. Lastly, the defendant claims that the Hobbs Act charges against the defendant are invalid as a matter of law and therefore must be dismissed and that the indictment against him contains multiplicitous and/or duplicitous charges which must be dismissed. Dkt. #78.

The government has filed its response to the defendant's motions. Dkt. #92.

Oral argument on the motions was heard by this Court and the matter was taken under advisement.

## DISCUSSION AND ANALYSIS

The defendant has filed an affidavit of standing in support of his motion to suppress the use of evidence relating to certain social media accounts and a particular telephone number relating to a search warrant for prospective location information associated with that telephone number, *i.e.*, 716-275-8018.  More specifically, the search warrants in question are a search warrant issued by this Court on April 11, 2022 (22-MJ-56)[1] and a search warrant issued by the Hon. Jeremiah McCarthy on March 11, 2022 (22-MJ-1013).

---

[1] A corrective search warrant for the Apple iPhone was issued on April 14, 2022.  The search warrant of April 11, 2022 was used for the Facebook account.

Although defense counsel has listed a number of search warrants in his moving papers on behalf of the defendant and "reserves his right to move to suppress evidence and controvert search warrants for any other search warrants which were executed under the circumstances and as related to this case," the defendant has only provided an affidavit based on his personal expectation of privacy as to three specified search warrants.  Dkt. #78, pp. 45-47; Dkt. #78-1, ¶ 5.  The search warrants specifically referenced by the defendant in his affidavit are:

(1)  Search Warrant 22-MJ-56-01 dated April 11, 2022;

(2)  Search Warrant 22-MJ-56-02 dated April 14, 2022;

(3)  Search Warrant 22-MJ-1013 dated March 11, 2022.

Therefore, the Court is not obligated to address all the other search warrants listed in the motion and will not do so.  *United States v. Caruso*, 684 F.Supp. 84, 87 (S.D.N.Y. 1988); *United States v. Gillette*, 383 F.2d 843, 848 (2d. Cir. 1967).

### 1.   The Search Warrants of April 11 and 14, 2022, 22-MJ-56, 01 and 02

The search warrant dated April 11, 2022 (22-MJ-56, 01) authorized the search of a Facebook account identified as 100001207077052, with the User Name: "ognikey" and the seizure of particularized information contained therein relating to

violations of Title 21 U.S.C. § 846 and Title 18 U.S.C. §§ 922(g), 1073 and 1071.

The search warrant dated April 14, 2022 (22-MJ-56, 02) authorized the search of an "Apple iPhone with purple case with no visible identifying information contained therein" relating to violations of Title 21 U.S.C. § 846 and Title 18 U.S.C. §§ 922(g), 1071 and 1073.[2]

The defendant argues that the search warrant of April 11, 2022 (22-MJ-56, 01) "was overbroad in as much as it authorized a search for basically, [the defendant's] Facebook and Instagram accounts" and that "there was no limitation to what could be revealed to the government." He also argues that "probable cause did not exist" for the issuance of this search warrant and "did not state with a degree of particularity what items could be seized or should be seized." Dkt. #78, p. 57, ¶s 160, 162. In further support of his claim that probable cause did not exist for the issuance of these search warrants of April 11 and 14, 2022 (22-MJ-56, 01, 02), the defendant asserts that his "mere association" with the co-defendant Allen does not "support probable cause based upon [his] [alleged] association with a suspected drug dealer," citing *United States v. Chandler*, 56 F.4th 27, 41, 42 (2d Cir. 2022). Dkt. #104, p. 2. For the reasons hereinafter stated, these arguments of the defendant are rejected as being without legal merit.

---

[2] This search warrant was issued to correct a typographical error, *i.e.*, wrong date, that had been issued by this Court on April 11, 2022 with respect to this Apple iPhone.

The case of *Chandler*, as cited by the defendant, is not applicable to the facts of this case and the search warrants in question.  The issue in *Chandler* involved the search of the defendant's residence by probation officers who were supervising the defendant's supervised release.  There the defendant argued that the probation officers "showed an insufficient nexus between his criminal activity and the places searched – his home and his rental car – to provide the requisite reasonable suspicion" to search his home and car for drug trafficking and gun possession activity.  *Id.* at 41.  The *Chandler* court did not address in any way the issue of "association with others engaged in criminal activity" as asserted by the defendant herein.

Furthermore, the search warrants of April 11 and 14, 2022 (22-MJ-56, 01 and 02) issued by this Court were not based on claims of "mere association" by the defendant with the co-defendant Allen.  These search warrants were based on established probable cause as described in the sworn affidavit of Special Agent Dailey of the F.B.I. in support of the search warrants application.

In support of the application for these search warrants, Special Agent Dailey describes in detail the investigation that had been conducted in investigating the drug activity of the defendant and others.  This investigation commenced in August 2019 and it was determined that the defendant had been convicted of a robbery charge on November 20, 2018 relating to drug activity.  It was also determined that the defendant had been arrested on

February 16, 2019 for criminal possession of a controlled substance, cocaine, for which he received a conditional discharge.  On April 3, 2019, the defendant and the co-defendant Allen were charged with criminal possession of a controlled substance in violation of New York State law to which the defendant pleaded guilty for which he was sentenced to two years of incarceration and thereafter released on parole in June 2021.  The co-defendant Allen also entered a plea of guilty to these charges.  In September of 2021, the defendant was observed along with two other individuals in the participation of a controlled drug purchase by law enforcement authorities.  A prior review of the defendant's and co-defendant Allen's Facebook accounts pursuant to search warrants revealed that the defendant and Allen "were in communication regarding narcotics distribution."  Case 22-MJ-56, Dkt. #1.

On August 25, 2021, a federal grand jury in the Western District of New York indicted Allen with having violated numerous sections of Title 21 U.S.C. relating to illegal drug activity and a warrant for his arrest was issued.  On September 2, 2021, the defendant and Allen were observed by surveillance police units to be driving in a vehicle when a marked patrol unit from the Erie County Sheriff's Office attempted to stop this vehicle for a vehicle traffic violation.  This vehicle containing Allen and the defendant "took off at a high rate of speed" and attempted "to elude law enforcement for approximately 10 minutes."  When the vehicle finally came to a stop, Allen exited the vehicle and began to flee but was ultimately taken into custody.  The defendant was also observed exiting the vehicle from the front passenger side and fleeing successfully.

However, a search by law enforcement officers around the stopped vehicle resulted in the findings of a "magazine loaded with 6 rounds of ammunition on the ground next to a front passenger's side door of the vehicle."  A further search of the surrounding area of this stopped vehicle resulted in the finding of "a Taurus .40 calibre handgun . . . along the route that [the defendant] was observed running."  An inventory search of the vehicle was conducted whereby "N.Y.S. Parole paperwork for [the defendant]" was found in the vehicle.  Thereafter, and as part of the continuing investigation of the defendant and Allen, DNA evidence on the Taurus .40 calibre handgun was compared to a buccal swab from the defendant, and this DNA analysis linked the defendant to the recovered firearm and that ammunition magazine.  22-MJ-56, Dkt, #1, pp. 6-16.

On November 17, 2021, the defendant was charged in a Criminal Complaint with having violated Title 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (21-MJ-181) and a warrant for his arrest was issued.  Although the defendant's attorney had indicated that the defendant would voluntarily surrender and appear on this Criminal Complaint, he failed to do so and remained as a fugitive until March 25, 2022 when he was arrested by law enforcement officials.  As part of this arrest, the Apple iPhone was seized from the defendant's person.

## A.  The Issue of Probable Cause for the Warrants

In determining whether probable cause exists for the issuance of a search warrant, the United States Supreme Court has stated:

> The totality of the circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific "tests" be satisfied by every informant's tip.  Perhaps the central teaching of our decisions bearing on the probable-cause standard is that it is a "practical, nontechnical conception."  (citation omitted).  "In dealing with probable cause, . . . as the very name implies, we deal with probabilities.  These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  (citation omitted.)

> In *Aguilar,* we required only that "the magistrate must be informed of *some of the underlying circumstances* from which the informant concluded that . . . narcotics were where he claimed they were, and *some of the underlying circumstances* from which the officer concluded that the informant . . . was "credible" or his information "reliable." (citation omitted).

> As our language indicates, we intended neither a rigid compartmentalization of the inquiries into an informant's "veracity," "reliability," and "basis of knowledge," nor that these inquiries be elaborate exegeses of an informant's tip. Rather, we required only that *some* facts bearing on two particular issues be provided to the magistrate.

> *   *   *

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that

8

contraband or evidence of a crime will be found in a
particular place. And the duty of a reviewing court is simply
to ensure that the magistrate had a "substantial basis . . . for
[conclud[ing] "that probable cause existed. (citation omitted).
We are convinced that this flexible, easily applied standard
will better achieve the accommodation of public and private
interests that the Fourth Amendment requires than does the
approach that has developed from *Aguilar* and *Spinelli*.

*Illinois v. Gates*, 462 U.S. 213, 231, 238-239 (1983*); United States v. Boles*, 914 F.3d

95, 102 - 103 (2d Cir.), *cert. denied* 139 S.Ct. 2659 (2019).


As the Court of Appeals for the Second Circuit stated:

A plaintiff who argues that a warrant was issued on less than
probable cause faces a heavy burden. "Where [the]
circumstances are detailed, where reason for crediting the
source of the information is given, and when a magistrate
has found probable cause, the courts should not invalidate
the warrant by interpreting the affidavit in a hypertechnical,
rather than a commonsense, manner. . . . [T]he resolution of
doubtful or marginal cases in this area should be largely
determined by the preference to be accorded to warrants."
*United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741,
746, 13 L.Ed.2d 684 (1965). In particular, where the officer
requesting the search warrant relies on an informant, the
magistrate's role is to examine the totality of the
circumstances and to make a practical, commonsense
decision whether, given all the circumstances set forth in the
affidavit before him, including the "veracity" and "basis of
knowledge" of persons supplying hearsay information, there
is a fair probability that contraband or evidence of a crime
will be found in a particular place. And the duty of a
reviewing court is simply to ensure that the magistrate had a
"substantial basis for . . . conclud[ing]" that probable cause
existed.
*Illinois v. Gates,* 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332,
76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362
U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *see
United States v. Feliz-Cordero*, 859 F.2d 250, 252-53 (2d Cir.
1988).

9

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).

Not only did Special Agent Daily utilize the factual history relating to the defendant's criminal activities in support of the application for the search warrants of April 11 and 14, 2022, he also presented his training and experience that has enabled him to know "that gang members and associates involved in firearms and narcotic related offenses frequently use cellular telephones to further their illegal activities by, among other things, remaining in constant or ready communication with one another" and that "firearms and narcotics traffickers use various social media websites (Snapchat, Facebook, Instagram and Twitter) via their cellular phones to post pictures of themselves and other individuals posing with firearms, more specifically handguns." 22-MJ-56, pp. 4-5, ¶s 9-10.  Training and experience of an agent can be considered in determining whether probable cause exists for the issuance of a search warrant.  *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985), *cert. denied*, 486 U.S. 1043 (1987).

It is also pointed out that the defendant's flight from the vehicle on September 2, 2021 and his fugitive status from November 17, 2021 to March 25, 2022 also supplied data for finding probable cause.  Unprovoked flight upon noticing police is pertinent in determining reasonable suspicion.  *United States v. Brignoni-Ponce*, 422 U.S. 873 (1975).

> Headlong flight - whenever it occurs - is the consummate act
> of evasion: It is not necessarily indicative of wrongdoing, but

it is certainly suggestive of such . . . . [T]he determination of
reasonable suspicion must be based on commonsense
judgments and inferences about human behavior.

\*   \*   \*

Flight, by its very nature, is 'not going about one's business';
in fact, it is just the opposite.  Allowing officers confronted
with such flight to stop the fugitive and investigate further is
quite consistent with the individual's right to go about his
business or to stay put and remain silent in the face of police
questioning.

*Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000).


In considering the totality of the circumstances herein, I find that the

defendant has failed in his burden to invalidate the search warrants of April 11 and 14,

2022 and that his argument that probable cause was lacking for the issuance of these

search warrants is without legal merit.  Therefore, it is recommended that his motion to

suppress the evidence seized pursuant to these warrants on this basis be denied.


### B.   The Issue of Overbroadness of the Search Warrants


The defendant asserts that the search warrant of April 11, 2022 (22-MJ-

56-01) "was overbroad" and therefore "neither the officer nor the Court made any effort

to restrict the vast amount of information that was sought pursuant to the search warrant

as was contained at attachment AB (sic)" being the separate attachments to the warrant

itself.  This assertion is totally erroneous and therefore rejected.

11

Attachment A expressly describes with particularity the Facebook and Instagram accounts that are subject to the search warrant, *i.e.*, "Facebook User ID: 10000120707052 and Instagram User Name 'ognikey' that are stored at premises owned, maintained, controlled or operated by Meta, Inc."

Attachment B expressly limits the production of information in the accounts to the period August 1, 2021 to the date of service of the search warrant, and the information to be provided from the account is specifically described in paragraphs (a) through (p) in this attachment.

Further limitation is found in Attachment B under the heading "Information to be seized by the government."  The information to be seized by the government is restricted specifically to that which "constitutes fruits, evidence and instrumentalities of **violations of Title 21 U.S.C. § 846 (conspiracy to possess and to distribute a controlled substance) and Title 18 U.S.C.  §§ 922(g) (felon in possession of a firearm and ammunition), 1071 (concealing a person from arrest) and 1073 (flight to avoid prosecution) (hereinafter the Target Offenses) since June 17, 2021 to the present, including, for each user ID identified on Attachment A)" (emphasis added),** which information is further described in paragraphs (a) through (g) under this heading.  This category of seizable items are adequately described so as to comply with

the requirements of the Fourth Amendment.  As the Court of Appeals for the Second

Circuit has stated:

> In upholding broadly worded categories of items available for
> seizure, we have noted that the language of a warrant is to
> be construed in light of an illustrative list of seizable items.
> *See United States v. Young*, 745 F.2d 733, 759-60 (2d Cir.
> 1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85
> L.Ed.2d 142 (1985); *see also Andresen v. Maryland*, 427
> U.S. at 480-81, 96 S.Ct. at 2748-49.  In the pending case,
> the warrant supplied sufficient examples of the type of
> records that could be seized – bank records, business
> records, and safety deposit box records.  No doubt the
> description, even with illustrations, did not eliminate all
> discretion of the officers executing the warrant, as might
> have occurred, for example, if the warrant authorized seizure
> of the records of defendant's account at a named bank.  But
> the particularity requirement is not so exacting.  Once a
> category of seizable papers has been adequately described,
> with the description delineated in part by an illustrative list of
> seizable items, the Fourth Amendment is not violated
> because the officers executing the warrant must exercise
> some minimal judgment as to whether a particular document
> falls within the described category.
>
> It is true that a warrant authorizing seizure of records of
> criminal activity permits officers to examine many papers in a
> suspect's possession to determine if they are within the
> described category.  But allowing some latitude in this regard
> simply recognizes the reality that few people keep
> documents of their criminal transactions in a folder marked
> "drug records."

*United States v. Riley*, 906 F.2d 841,845-846 (2d Cir. 1990); *see also Andresen v.*

*Maryland*, 427 U.S. 463, 482 (1976).

13

Therefore, it is recommended that the defendant's motion to suppress the evidence seized pursuant to the search warrant of April 11, 2022 (22-MJ-56-01) on this basis be denied.

## C. The Issue of the Search Warrant for the iPhone Search Warrant (22-MJ-56-02)

The defendant points out that the search warrant of April 11, 2022 (22-MJ-56-01) only authorized the search of the Facebook and Instagram accounts and did not authorize the search of the Apple iPhone (purple) and therefore any search of that phone "must be suppressed as outside the search warrant."  Dkt. #78, p. 54, ¶ 145.

When this Court issued the original search warrant for the Apple iPhone in question, it erroneously placed the date of "April 21, 2022" as the date and time issued" when it should have been April 11, 2022.  This error was brought to the attention of the Court by the government on April 14, 2022.  As a result, a correcting search warrant was issued on April 14, 2022 (22-MJ-56-02) by this Court which authorized the search of an "Apple iPhone with a purple case with no identifying information visible."  As part of that search warrant, Attachment C containing this description and photos of the phone and case was attached as was "Attachment D" which listed in detail "items comprising evidence of, or property designed for use, intended for use, or used in committing violations of Title 18 U.S.C. §§ 922(g) (felon in possession of a firearm),

14

1071 (concealing a person from arrest), and 1073 (flight to avoid prosecution) (hereinafter, the 'Target Offenses')" as set forth in paragraphs (a) through (d) on the attachment.

Once again, this search warrant, with its descriptive limitations of what was subject to search and seizure, fully complied with the particularization requirements of the Fourth Amendment and, therefore, it is recommended that the defendant's motion to suppress evidence seized pursuant to this search warrant of April 14, 2022 (22-MJ-56-02) also be denied.

### D.  The Search Warrant of March 11, 2022 (22-MJ-1013)

The Hon. Jeremiah J. McCarthy issued a search warrant on March 11, 2022 which authorized the prospective monitoring of a cell phone having the registered telephone number 716-275-8018 and the registered user of that cell phone as being the defendant (22-MJ-1013).  In his affidavit of standing (Dkt. #78-1), the defendant states that he "was the owner of the account and had a proprietary/possessory interest in the account" and therefore he has "standing within which to move to suppress the evidence seized as a result of those searches."  Dkt. #78-1, p. 3, ¶ 6.

However, counsel for the defendant, in his motion papers seeking suppression of evidence, states that he "has been advised that the government does

not plan to utilize any information obtained as a result of this search warrant."  Dkt. #78, p. 47, ¶ 120(L).  Thus, any issue relating to this search warrant is moot and therefore it is recommended that the defendant's motion to suppress relating to this search warrant be denied.

### E.  The Defendant's Claim of a Warrantless Stop of the Vehicle in which He was a Passenger

The defendant asserts that he was "legitimately a passenger in a vehicle driven by another individual" when "the vehicle was stopped by members of the Erie County Sheriff's Department" on September 2, 2021, and that "the Sheriff's officers did not possess any degree of reasonable cause to believe that probable cause existed to stop the vehicle" and "[a]s a consequence, the stopping of the vehicle was illegal and the chasing of the vehicle itself was illegal as well."  Dkt. #78, p. 58, ¶s 165-166.

Admittedly, as a passenger in the vehicle stopped, the defendant has standing in which to assert his Fourth Amendment rights.  The United States Supreme Court has expressly held that "stopping a car and detaining its occupants constitute a seizure."  *Brendlin v. California*, 551 U.S. 249, 256 (2007) citing *United States v. Hensley*, 469 U.S. 221, 226 (1985).  As a result, any occupant in the vehicle stopped has standing for purposes of asserting Fourth Amendment rights since the "seizure" of the vehicle also constituted a "seizure" of the defendant as an occupant of the vehicle.  *Id*. at 255-256.  Therefore, the defendant does have standing to challenge the actions of

16

the police as being violative of his constitutional rights.  *Id.* at 251.

In his motion to suppress evidence, the defendant seeks to prevent the use of a weapon and ammunition magazine as evidence which was found and seized by law enforcement officials after the vehicle in which the defendant was a passenger came to a halt after a ten minute flight and law enforcement chase.  For the reasons hereinafter stated, the defendant's arguments on this issue of September 2, 2021 are totally rejected as being without legal merit.

The driver of the vehicle in which the defendant was a passenger on September 2, 2021 was the co-defendant, Diamond Allen.  On August 25, 2021, a federal grand jury sitting in the Western District of New York returned an indictment against Allen alleging a violation of Title 18 U.S.C. §§ 922(g)(1)(, 924(c)(1)(A)(i) and Title 21 U.S.C. §§ 841(a)(1), 846 and 856(a)(1).  Dkt. #1.  As a result, a warrant for the arrest of Allen was issued on August 25, 2021 (Minute Entry August 25, 2021).  Dkt. #15.  Thereafter, law enforcement officers conducted surveillance of Allen for purposes of arresting him based on the aforesaid indictment and the arrest warrant authorizing his arrest.  Allen was observed driving his vehicle with the defendant as a passenger on September 2, 2021 by law enforcement officers who then attempted to stop the vehicle and arrest Allen pursuant to this warrant for his arrest and the indictment which clearly established probable cause for this vehicle stop.

17

When the officers attempted to stop the vehicle, it fled and had to be chased by the officers for approximately ten minutes.  When it came to a stop, the officers observed Allen exit the vehicle from the driver's side and the defendant from the passenger side and flee from the scene.  Allen was apprehended on September 2, 2021 but the defendant was successful in his flight from the scene that day.  Nevertheless, the police officers continued their investigation around the scene of the abandoned vehicle that Allen had been driving and in doing so discovered and seized a "magazine loaded with 6 rounds of ammunition on the ground next to the front passenger's side door of the vehicle" and a "Taurus .40 calibe handgun . . . along the route that [the defendant] was observed running."  22-MJ-56, Dkt. #1, p. 10, ¶s 20-22.  This property is deemed to be abandoned property and therefore the defendant has no standing to challenge that recovery as a violation of his Fourth Amendment rights.  *Abel v. United States*, 362 U.S. 217, 241 (1960).  "It is well settled that if a defendant abandons property while he is being pursued by police officers, he forfeits any reasonable expectation of privacy he may have in that property."  *United States v. Soto-Beniquez*, 356 U.S. F.3d 1, 36 (1st Cir. 2003).  As the United States Supreme Court stated:  "The special protection accorded by the Fourth Amendment . . . is not extended to the open fields."  *Hester v. United States*, 265 U.S. 57, 59 (1924).

It is also pointed out that the defendant was not seized by police officers on September 2, 2021.  Pursuit of a vehicle in which the defendant was a passenger did not constitute a seizure of the defendant.  "A seizure is a single act and not a

continuous fact."  *Thompson v. Whitman*, 18 Wall 457, 471 (1874) (*quoted with approval in California v. Hodari D*, 499 U.S. at 625).  The rationale of the United States Supreme Court's decision in *Hodari D* applies on all fours to the events of September 2, 2021 wherein the court ruled:

> In sum, assuming that Pertoso's pursuit in the present case constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled.  The cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied.

*Hodari D.,* 499 U.S. at 629.

Therefore, it is recommended that the defendant's motion to suppress the evidence found and seized by law enforcement officers on September 2, 2021 be denied.

## F.  The Defendant's Hobbs Act Motion

Count 3 of the superseding indictment charges the defendant, along with the co-defendants, with a "Hobbs Act Conspiracy" in violation of Title 18 U.S.C. § 1951(a).  Dkt. #38, p. 3.  Count 4 of the superseding indictment charges the defendant, along with the co-defendants, with "Hobbs Act Robbery" in violation of Title 18 U.S.C. § 1951(a).

19

In his motion to dismiss the "Hobbs Act Robbery" charge, the defendant argues that because "no interstate nexus has been pled nor can be proven," this charge must be dismissed.  This argument by the defendant and his motion to dismiss the charge is rejected without prejudice as being premature.

The Hobbs Act provides for criminal penalties for anyone who "in any way or degree obstructs, delays, or affects interstate commerce or the movement of any article or commodity in commerce, by robbery . . . or attempts or conspires so to do." 18 U.S.C. § 1951(a).  The government has the burden of proving "an effect on interstate commerce" because it is an element of a Hobbs Act offense, and this element must be proven beyond a reasonable doubt to a jury.  *United States v. Parks*, 487 F.3d 220, 226-227 (2d Cir. 2007), *cert. denied* 552 U.S. 1333 (2008); *United States v. Needham*, 604 F.3d 673, 677-678 (2d Cir. 2010).

The appropriate time for this motion would be at the trial after the government has presented its evidence on the issue.  Therefore, it is recommended that the defendant's motion on this basis be denied without prejudice.

The charges in Counts 3 and 4 of the superseding indictment are legally sufficient.  "[A]n indictment is sufficient if it first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend and,

second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007).

The Second Circuit Court of Appeals reiterated this principle wherein it stated:

> It bears recalling that "we have consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms ) of the alleged crime." United States v. Pirro, 212 F.3d 86, 100 (2d Cir.2000) (internal quotation marks omitted) (emphasis supplied). Indeed, "in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." United States v. LaSpina, 299 F.3d 165, 177 (2d Cir.2002). Rather, "[a]n indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008) (internal quotation marks omitted).

*United States v. Bout*, 731 F.3d 233, 240-241 (2d Cir. 2013); *United States v. Stavroulakis*, 952 F.2d 686,693 (2d Cir.), *cert. denied*, 504 U.S. 926 (1992); *See also Russell v. United States*, 369 U.S. 749, 765-766 (1962).

It is therefore recommended that defendant's motion to dismiss be denied as to Counts 3 and 4 of the indictment.

### G. Defendant's Motion to Dismiss Count 5
### of the Superseding Indictment

Count 5 of the Superseding Indictment charges that the defendant "did knowingly and unlawfully use, carry, and brandish a firearm" while committing a crime of violence, to wit, "a violation of Title 18 United States Code, Section 1951(a)" (Hobbs Act Violation), and "in furtherance of such crime, did knowingly and unlawfully possess and brandish a firearm, all in violation of Title 18 United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), and 2. Dkt. #38.

The defendant argues that "all of the 18 U.S.C. § 924(c) charges contained in the indictment must be dismissed" since the United States Supreme Court ruled in *United States v. Davis*, 588 U.S. ___, 139 S.Ct. 2319 (2019), "that Title 18 U.S.C. § 924(c)(3) was unconstitutional" and therefore "the same is true [in this case] especially where defendants are charged with aiding and abetting each other." Dkt. #78, pp. 61-62. The defendant also relies on the Supreme Court's decision in *United States v. Taylor*, 569 U.S. ___, 142 S.Ct. 2015 (2022) in further support of his argument. For the reasons hereinafter stated, this argument of the defendant is rejected in its totality.

The holding in *United States v. Davis, supra*, is not applicable to the charges in this case. *Davis* focused on the language contained in 18 U.S.C. § 924(c)(3)(B) and found that the residual clause of definition of a violent felony was

22

unconstitutionally vague.  This decision did not affect the validity of 18 U.S.C.
§ 924(c)(3)(A) which defines the term "crime of violence" as "an offense that is a felony
and has as an element the use, attempted use, or threatened use of physical force
against the person or property of another."  A charge of violation of 18 U.S.C. § 1951(a)
(Hobbs Act) meets that definition.

The defendant's reliance on *United States v. Taylor, supra*, is also
misapplied in that *Taylor* was concerned with a plea of guilty entered by the defendant
to a charge of "attempted Hobbs Act robbery" and whether an "attempted Hobbs Act
robbery qualifie[d] as a 'crime of violence' under 18 U.S.C. § 924(c)(3)(A)."  *Supra* at
2018.  The Court found that it did not because an "attempted Hobbs Act robbery does
not satisfy the elements clause."  *Supra* at 2020.

In the case at bar, the defendant is charged with the actual or
**"completed"** crime of a Hobbs Act robbery (Count 4).  Therefore, in order for the
government "to win a conviction for a **completed**  [Hobbs Act] robbery, the government
must show that the defendant engaged in the 'unlawful taking or obtaining of personal
property from the person . . . or another, against his will by means of actual or
threatened force.  § 1951(b)."  *United States v. Taylor, supra* at 2020.  As the Second
Circuit Court of Appeals has stated:

> [W]e see nothing in *Taylor's* language or reasoning that
> undermines this Court's settled understanding that

completed Hobbs Act robberies are categorically crimes of violence pursuant to section 924(c)(3)(A) (citations omitted). Indeed, unlike in *Taylor*, Defendants here have presented no hypothetical case in which a Hobbs Act robbery could be committed without the use, attempted use, or threatened use of force against another person or his property.

*United States v. McCoy*, 58 F.4th 72, 74 (2d Cir. 2023).

At this stage of the proceedings, the defendant's motion to dismiss "all of the 18 U.S.C. § 924(c) charges is premature and must await completion of the government's proof at trial before it is ripe for consideration. Therefore, it is recommended that the defendant's motion be denied without prejudice with the right to renew same after the government has presented its evidence in support of the charge contained in Count 5 of the Superseding Indictment.

### H. Defendant's Multiplicity/Duplicity Claim

1. Defendant's Duplicitous Claim

The defendant asserts that Count 2 of the superseding indictment "is impermissibly duplicitous because it clearly combines two or more crimes into one" in that it "clearly charges multiple weapons within" Count Two. Dkt. #78, p. 61, ¶ 179. This Court finds no legal merit to support that claim.

Count 2 charges the defendant and the co-defendant Allen with "knowingly and unlawfully possess[ing] a firearm in furtherance of drug trafficking crimes" in violation of 21 U.S.C. § 846, "beginning in or before 2016 . . . and continuing until on or about September 2, 2021, all in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2." Dkt. #38, p. 2.

Apparently the defendant's claim that Count 2 "clearly charges multiple weapons within one count" is based on the allegation in Count 2 that the defendant's conduct began "in or about 2016 until or about September 2, 2021" and therefore there must have been "multiple weapons" during this time period, and the defendant cites *United States v. Sturdivant*, 244 F.3d 71 (2d Cir. 2001) in support of his position. This claim is rejected in its totality.

Count 2 of the superseding indictment expressly and clearly accuses the defendant of "knowingly and unlawfully possess[ing] **a firearm** in furtherance of a narcotics conspiracy" as alleged in Count 1 of the superseding indictment. Dkt. #38, pp. 1-2 (emphasis added).

The Court of Appeals decision in *Sturdivant* clearly works against the defendant's claim wherein it states:

> Here, at the outset of the proceeding, Count II of the indictment appeared to fall within an exception to the rule

prohibiting the inclusion of two crimes in the same count of an indictment.  Specifically, we have held that "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme."  *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989).  Count I of the original two-count indictment charged the existence of a conspiracy to commit acts charged in Count II.  Taking the conspiracy and substantive counts together, the indictment, as seen prior to trial, could reasonably have been interpreted to charge that the two transactions included in Count II were part of a single continuing scheme and thus were properly included in one count.  *See Tutino*, 993 F.2d at 1141 (holding that, based on finding that defendants had engaged in drug conspiracy, government could properly include two sales of heroin made in furtherance of that conspiracy within one count of indictment and could aggregate amounts of drugs involved in both transactions to meet statutory thresholds for certain mandatory minimum and maximum sentences).

*Id*. at 76; *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992).

The underlying predicate offense for the charge in Count 2 of violating 18 U.S.C. § 924(c)(1)(A)(i) is the "Narcotics Conspiracy" charge in Count 1.  Even if multiple firearms were used during the period 2016 to September 2, 2021, the narcotics conspiracy charge is a singular unit of prosecution and, therefore, even if multiple weapons were used during the conspiracy period, only one violation of 18 U.S.C. § 924(c)(1)(A) occurs.  *United States v. Lindsay*, 985 F.2d 666, 674 (2d Cir. 1993); *United States v. Pirk*, 267 F. Supp.3d 406, 428 (W.D.N.Y. 2017).

Once again, Count 2 of the superseding indictment charges the defendant with the unlawful possession of "a firearm," not multiple weapons as argued by the defendant.  The continuous possession of a gun during a specified time period "does not amount to a series of crimes, but rather constitutes a single offense."  *Ball v. United States*, 470 U.S. 856, 861, 865 (1985); *United States v. Towne*, 870 F.2d 880, 886 (2d Cir.), *cert. denied* 490 U.S. 1101 (1989).

It is also pointed out that the court in *Sturdivant*, upon which the defendant relies, clearly stated that "duplicity does not necessarily require dismissal of an indictment."  *Supra* at 79.  Therefore, it is recommended that this request of the defendant be denied in all respects.

## 2.   **Defendant's Multiplicitous Claim**

The defendant argues "that counts 2, 5 and 16 charge the defendant with violations of Title 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii) and 2 and count 16 charges defendant with conduct occurring during the charges contained in count 2 with violation of Title 18 U.S.C. § 922(g)(1), 924(a)(2) and 2" thereby causing Counts 5 and 16 to be multiplicitous since they had already been charged in Count 2 and therefore "the indictment must be dismissed."  Dkt. #78, p. 61, ¶ 182.

The United States Supreme Court enunciated the rule or test to be applied in making a determination of whether an indictment contains multiplicitous counts as follows:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. *Gavieres v. United States*, 220 U.S. 338, 342, 31 S.Ct. 421, 55 L. Ed. 489, and authorities cited. In that case this court quoted from and adopted the language of the Supreme Court of Massachusetts in *Morey v. Commonwealth*, 108 Mass. 433: "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

*Blockburger v. United States*, 284 U.S. 299, 304 (1932).

The Court of Appeals for the Second Circuit has reiterated this rule or test as follows:

> To assess whether the two offenses charged separately in the indictment are really one offense charged twice, the "same elements" test or the "*Blockburger*" test is applied. The *Blockburger* test examines whether each charged offense contains an element not contained in the other charged offense. *See Dixon*, 509 U.S. at 696, 113 S.Ct. 2849. If there is an element in each offense that is not contained in the other, they are not the same offense for the purposes of double jeopardy, and they can both be prosecuted.

*United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999); *United States v. Hadakas*, 286 F.3d 92 (2d Cir.); *cert. denied* 537 U.S. 894 (2002).

        In applying the *Blockburger* test to Counts 2, 5 and 16 of the superseding indictment, it is clear that each count contains an element not contained in the other charged offenses.  Count 2 charges the defendant with "knowingly and unlawfully possess[ing] a firearm in furtherance of drug trafficking crimes, that is, violation of Title 21 U.S.C. § 846 committed in the manner set forth in Count 1."   Thus, the government will be obligated to prove that the defendant was a participant in a conspiracy in violation of Title 21 U.S.C. § 876 and that he possessed a firearm in furtherance of this conspiracy in order to establish that the defendant violated 18 U.S.C. § 924(c)(1)(A)(i).

        Count 5 of the superseding indictment charges the defendant with "knowingly and unlawfully us[ing], carry[ing], and brandish[ing] a firearm" in furtherance of a Hobbs Act robbery, to wit, a violation of 18 U.S.C. § 1951(a) as charged in Count 4, "in violation of 18 U.S.C. §924(c)(1)(A)."  This count requires that the government prove the elements of a Hobbs Act robbery beyond a reasonable doubt, as part of its burden of proof that the defendant violated 18 U.S.C. § 924(c)(1)(A)(i) and (ii).  *United States v. Taylor, supra*.

        Since there are two different predicate crimes that must be proven by the government to obtain convictions of Counts 2 and 5 of the superseding indictment,

those counts are not multiplicitous with respect to each other.

Count 16 of the superseding indictment charges the defendant with having violated 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  To obtain a conviction of Count 16, the government must prove both that the defendant knew that he possessed a weapon and that he knew that he belonged to the relevant category of persons barred from possessing a firearm.  *Rehaif v. United States*, 588 U.S. ___, 139 S.Ct. 2191, 2200 (2019).  These elements of the offense charged are distinctly different than what would be proved under Counts 2 and 5 of the superseding indictment.  Therefore, it is recommended that the defendant's motion to dismiss these charges as being multiplicitous be denied.

## I.    The Defendant's Photo Array Claim

The defendant seeks a hearing that will explore the validity of a photo array procedure that was conducted by state law enforcement officers who were investigating an armed robbery of two students at St. Bonaventure University in October 2018.  This October 2018 armed robbery forms the basis for the Hobbs Act robbery charge in Count 4 of the superseding indictment herein.  In support of this application, the defendant asserts that the photo array consisting of six photographs shown to the victims of the robbery were "suggestive for a number of reasons," namely:  (1) the victims "indicated that the individuals who came into the dormitory were all clean

30

shaven" but that the photo array shown to them only includes one photo of a clean

shaven individual, to wit, the defendant, and that the individuals depicted in the photo

array "seemed to have a growth in their mustache area."  Dkt. #78, p. 59, ¶ 171.  *See*

Dkt. #92-1, Exhibit A, pp. 2-6.


My review of the aforesaid photo array causes me to conclude that the

array is not suggestive and that the differences complained of by the defendant are

without merit.  The differences complained of are at best minor in nature and "would

hardly suggest to an identifying witness that [the defendant] was more likely to be the

culprit."  *United States v. Bautista*, 23 F.3d 726, 731 (2d Cir. 1994) quoting *United*

*States v. Archibald*, 734 F.2d 938, 940 (2d Cir. 1984).  The photo array in question does

not meet "the standard for suppression on the ground of suggestiveness."  *United*

*States v. Salameh*, 152 F.3d 88, 126 (2d Cir. 1998); *United States v. Gibson*, 135 F.3d

257, 260 (2d Cir. 1998).  As the Court of Appeals for the Second Circuit has instructed:


> Each case turns on its own circumstances; but a prior
> identification from a photo array will be excluded only if the
> procedure "is so unnecessarily suggestive and conducive to
> irreparable mistaken identification that [the defendant] was
> denied due process of law," *United States v. Simmons*, 923
> F.2d 934, 950 (2d Cir.) (Internal quotation marks omitted),
> *cert. denied*, 500 U.S. 919, 111 S.Ct. 2018, 114 L.Ed.2d 104
> (1991), a challenge that Anglin does not make on this
> appeal.  An unbroken line of our decisions, of which
> *Salameh*, 152 F.3d at 125, is a recent example, permits use
> of a non-suggestive photo array for identification purposes
> and trial testimony based upon that identification.  *See also*
> *United States v. Thai*, 29 F.3d 785, 807-08 (2d Cir.), *cert.*
> *denied sub nom.  Lan Ngoc Tran v. United States*, 513 U.S.

977, 115 S.Ct. 456, 130 L.Ed.2d 364 (1994); *Jarrett v. Headley*, 802 F.2d 34 (2d Cir. 1986); *United States v. Archibald*, 734 F.2d 938, 940-941 (2d Cir.), *modified on other grounds*, 756 F.2d 223 (2d Cir. 1984); *United States v. Bubar*, 567 F.2d 192, 197-99 (2d Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977).

*United States v. Anglin*, 169 F.3d 154, 161 (2d Cir. 1999).

Therefore, the defendant's request for a hearing relating to the photo array identification procedure is denied.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v.*

32

*Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:     Buffalo, New York
           November 3, 2023

                              *S/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**